UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LUIS B.J.,

               Petitioner,

         v.

TAE D. JOHNSON, Acting Director, U.S. Immigration and Customs Enforcement; et al.,

               Respondents.

No. 1:26-cv-00897-TLN-JDP

**ORDER**

This matter is before the Court on Petitioner Luis B.J.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2). The Court ordered Respondents to file a response to Petitioner's motion by February 6, 2026. (ECF No. 4.) Respondents did not file a response, and the time to do so has now elapsed. The Court construes Respondents' failure to file a timely opposition as a non-opposition to the motion. *See* E.D. Cal. L.R. 230(c). For the reasons set forth below, Petitioner's motion is GRANTED.

I.    **FACTUAL AND PROCEDURAL BACKGROUND[1]**

Petitioner is an asylum seeker from Venezuela who entered the United States on December 31, 2023. (ECF No. 1 at 7.) Petitioner applied for asylum and was placed under ICE

---

[1]    These facts are taken from Petitioner's habeas petition and motion for TRO. (ECF Nos. 1–2.) As noted above, Respondents did not file a response disputing these facts.

1

supervision. (*Id.* at 2.) Petitioner submits that he has never missed an ICE appointment or check-in and has no criminal history. (*Id.* at 2, 5.)

Petitioner was detained during a routine ICE check-in appointment in New Jersey. (*Id.* at 2.) After Petitioner filed a bond request, ICE transferred him without notice to California. (*Id.*) Petitioner is currently detained at the California City Correctional Center. (*Id.* at 1.)

On February 2, 2026, Petitioner filed a Petition for Writ of Habeas Corpus challenging his detention as violating federal law and his due process rights. (*Id.* at 2–3.) Petitioner also filed the instant motion for TRO seeking his immediate release. (ECF No. 2.)

## II.   STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III.   ANALYSIS

### A.   Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due

Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.")  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

As for the first step, the Court finds Petitioner demonstrated he likely has a protectable liberty interest.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.")  Petitioner gained an interest in his continued freedom when he was released into the United States under ICE supervision after he arrived in 2023.  Petitioner submits that he has complied with the conditions of his supervision and has never missed an ICE appointment or check-in.  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner's filings indicate that he was out of immigration custody for approximately two years,

during which time Petitioner sought asylum protection and complied with the conditions of his supervision. Despite that, Petitioner was detained without notice or a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). Here, Petitioner was released under ICE supervision and maintains that he has never missed an ICE appointment or check-in and has no criminal history. Based on this record, the Court finds there is a serious likelihood Petitioner's detention erroneously deprives him of his liberty interest.

Finally, the Government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Petitioner is presently seeking asylum and there is no indication he has been issued a final order of removal. Therefore, on this record, the Court can find no legitimate interest for Respondents to continue detaining Petitioner.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was likely entitled to notice and a hearing to determine whether detention was warranted. He received neither.

Accordingly, Petitioner has shown he is likely to succeed on the merits of his due process claim.[2]

B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. (ECF No. 2 at 1.) Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a determination on his immigration and asylum proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). As Petitioner has shown he is likely to succeed on the merits of his constitutional claim, Petitioner faces continued denial of his constitutional rights without a TRO. The Court thus finds Petitioner has demonstrated irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir.

---

[2]    Petitioner also argues his detention violates federal law. (ECF No. 1 at 2–3.) As the Court finds Petitioner is entitled to preliminary relief based on his constitutional claim, the Court need not evaluate Petitioner's statutory claim.

5

1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED (ECF No. 2).

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody.

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondents show there are material changed circumstances that demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.  Petitioner's newly appointed counsel may supplement or amend Petitioner's habeas petition by **February 13, 2026**.  Respondents shall file responsive papers by **February 20, 2026**.  Petitioner may

file a reply by **February 25, 2026.**  The parties shall indicate in their briefing whether they request a hearing.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: February 10, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE